# Bauer v. Verona Ferry Company, Appellant.

*Ferrier—Common carriers—Negligence—Animals.*

A ferryman is a common carrier of goods, and like other common carriers is an insurer of the property committed to his care and is responsible for all injuries to it, except such as may be caused by the act of God or a public enemy. The ferryman's liability as a common carrier is not relieved or lessened by the fact that the goods are usually accompanied by the owner. His responsibility in regard to animals is the same as in the case of other property, except where the loss or injury is due to the animals' own restiveness or viciousness of temper.

A ferryman must maintain safe and suitable landing places for the ingress and egress of passengers and teams, and appliances of sufficient strength to hold the boat securely to her moorings, but he is not bound to guard against all possible accidents which could not reasonably have been foreseen, nor is he bound to adopt new and improved methods, where those already in use are reasonably safe. The duty as to the safety of landings applies not only to the immediate means of getting on and off the boat, but requires the ferryman to furnish safe passageways between the ferryhouses and the streets.

Argued April 9, 1907.   Appeal, No. 7, April T., 1907, by defendant, from judgment of C. P. No. 2, Allegheny Co., Jan. T., 1904, No. 954, on verdict for plaintiff in case of John Bauer v. Verona Ferry Company.   Before RICE, P. J., HENDERSON, MORRISON, HEAD and BEAVER, JJ.   Affirmed.

Trespass for injuries to horses.   Before FRAZER, P. J.
The facts are stated in the opinion of the Superior Court.
Verdict and judgment for plaintiff.

*Errors assigned* were (1) refusal of binding instructions for defendant; (2) refusal of judgment non obstante veredicto, and (3, 4) portions of the charge quoted in the opinion of the Superior Court.

*J. P. Hunter*, of *Lyon, Hunter & Burke*, for appellant.—The landing not being on a superstructure erected by the defendant, but on a public highway, and the accident not arising from any defect in any of the means of transportation furnished by the

defendant, the defendant is not liable as a common carrier: White v. Winnisimmet Co., 61 Mass. 155; Sturgis v. Kountz, 165 Pa. 358; Mayor, etc., of New York v. Starin, 106 N. Y. 1 (12 N. E. Repr. 631).

The plaintiff saw that there was water to travel through in order to get from the boat to the land. He saw there irregularities in the ground; his driving off the boat with such knowledge constituted contributory negligence: Fogassi v. R. R. Co., 17 App. Div. 286 (45 N. Y. Supp. 175); Reilly v. Ry. Co., 4 W. N. C. 273; Fish v. Cooper's Point, etc., Ferry Co., 4 Phila. 103; Hayman v. R. R. Co. 118 Pa. 508.

*Alfred M. Lee*, with him *John D. Watson*, for appellee, cited: Ferris v. Union Ferry Co., 36 N. Y. 312; Osborn v. Ferry Co., 53 Barb. (N. Y.) 629; Hazman v. Hoboken Land, etc., Co., 50 N. Y. 53; Dougherty v. N. Y. Cent., etc., R. R. Co., 86 N. Y. Supp. 746; May v. Hanson, 5 Cal. 360.

OPINION BY BEAVER, J., May 13, 1907:

The plaintiff's testimony, which is practically uncontradicted, the defendant having introduced none, discloses the following state of facts: The defendant is an incorporated ferry company which ferries passengers across the Allegheny river from Montrose to what is said, in one part of the testimony of the secretary and treasurer of the company, to be James street, Verona, and Grant street in another. The plaintiff, driving his own wagon loaded with household goods, which he was hauling from Allegheny to Verona for hire, drove upon the ferryboat of the company behind another wagon and was ferried across the river. There seems to have been no slip at the landing and, whether or not the boat was provided with a falling curtain does not appear. When the boat came within two or three feet of the street landing, the intervening space being covered with water, the first team drove off and landed safely, notwithstanding a jolt which was observed by the plaintiff. According to his testimony, he made careful inquiry of the custodian of the boat as to whether or not it was safe to land, and, having been assured more than once that he should drive off, that the landing was safe, he attempted to drive to the street, his horses stumbling in a sand hole in the river, his

wagon pressing upon them in such a way that both were seriously injured.

The plaintiff recovered a verdict for $277.40 which, upon the argument of a motion for judgment in favor of defendant n. o. v., was reduced by the court to $226, with an alternative that, if the amount were not accepted by the plaintiff, a new trial would be granted. The plaintiff filed an agreement to accept the amount fixed by the court, and judgment was entered upon the verdict, from which defendant has appealed.

The duties and liabilities of a ferryman, based upon the decisions in many different states and countries, are summarized in 19 Cyc. 508 et seq.: " A ferryman is a common carrier of goods, and like other common carriers is an insurer of the property committed to his care and is responsible for all injuries to it, except such as may be caused by the act of God or a public enemy. The ferryman's liability as a common carrier is not relieved or lessened by the fact that the goods are usually accompanied by the owner. His responsibility in regard to animals is the same as in the case of other property, except where the loss or injury is due to the animals' own restiveness or viciousness of temper.

" There is a diversity of opinion as to the liability of a ferryman for property which a passenger takes with him upon a ferryboat for transportation and does not deliver into the custody of the ferryman, but retains under his own control and management. It has been held that, in such a case, the owner acts in the control of his property, solely as the agent of the ferryman, whose responsibility is that of a common carrier, insuring the safety of the property. On the other hand, it has been held that the liability of a ferryman in such cases is more restricted."

Under circumstances such as we have here presented, it has been held that: " A ferryman must maintain safe and suitable landing places for the ingress and egress of passengers and teams, and appliances of sufficient strength to hold the boat securely to her moorings, but he is not bound to guard against all possible accidents which could not reasonably have been foreseen, nor is he bound to adopt new and improved methods, where those already in use are reasonably safe. The duty as to the safety of landings applies not only to the immediate

means of getting on and off the boat, but requires the ferryman to furnish safe passageways between the ferryhouses and the streets."

The remarks of JERVIS, C. J., in Willoughby v. Horridge, 74 E. C. L. 742, would seem to be specially applicable here: " The fact of their being carriers is introduced for the purpose of showing how the mare got into their possession; but the foundation of the action is the aggressive negligence of the defendants. In substance, the charge against the defendants, is, that they took the plaintiff's mare for hire, to be conveyed from Birkenhead to Liverpool, and, through their negligence, the mare was killed. No doubt the defendants, as ferrymen, are bound to continue the road from Birkenhead to Liverpool, and duly to provide everything necessary to perfect that road. It is not enough for them to convey passengers and goods across the river, unless they also bridge over the intervening space between the vessel and the landing place. They are as much bound to furnish a safe slip for that purpose as to furnish a safe vessel to cross the river."

In Sturgis v. Kountz, 165 Pa. 358, although an entirely different case from what we have here was presented, it was held, as stated in the syllabus, that: " It is the duty of a ferryman who undertakes to carry passengers, horses and vehicles for hire, to carry safely as against defects and insufficiency of his boat or neglect on part of himself and servants."

With these general principles in mind, which are supported by abundant authority, it is not difficult to reach the conclusion that the court could neither give binding instructions for defendant, as requested, nor, upon a careful consideration of the case, enter judgment for the defendant n. o. v. The first and second specifications of error must, therefore, be overruled.

The third specification assigns for error a single paragraph of the charge of the trial judge in the court below, which is: " A ferry company is what is known as a common carrier. It belongs to the same class of corporations as a railroad company, and, as a common carrier, the law imposes certain duties or obligations upon the company. Among those duties is to provide a proper boat or ferry for the purpose of conveying its passengers. It must also provide proper approaches to and from the land to its boats for the purpose of enabling persons

to use its boats in safety, just the same as the law imposes the duty upon a railroad company of furnishing safe and proper means of transport for its passengers and also a safe place for its passengers to alight from the cars; and a failure to perform any of these duties upon the part of the carrier is negligence and, if an injury results from that negligence, the injured person is entitled to receive compensation for the injury."

It very clearly appears from this paragraph that the court did not impose upon the defendant the duty of a common carrier, as an insurer of the goods transported, but based the right of recovery solely upon the question of negligence.

In the paragraph of the charge immediately following that which is assigned for error, there is a carefully considered definition of negligence, and later on the trial judge says: " The first question for you to determine is whether or not, under all the circumstances, the ferry company was guilty of negligence. If it was not guilty of negligence, that is the end of the case. If it did all it could be reasonably expected to do, under the circumstances, and the injury was the result of some unforeseen accident, something that could not under the circumstances have been avoided, that is the end of the case.    The defendant is not responsible and the plaintiff cannot recover in these proceedings, but, on the other hand, if you can find that the defendant company was guilty of negligence, that it did not make a proper landing, and, as a result of the information obtained by the plaintiff from the ferryman, the accident happened which resulted in injury to the horses, then the defendant company is liable and it must compensate the plaintiff for the injuries sustained through its negligence."    This was in entire accord with the authorities and the general conclusions stated as their summary at the beginning of this opinion, and seems to us to have sufficiently and fairly covered the entire case.

The facts, as they appeared in the testimony, were fairly stated, leading up to these general conclusions.    The trial judge evidently had in mind the restricted liability of the common carrier, growing out of the fact that the plaintiff, who was the driver of his horses and had them under his own custody and control, could only recover on the ground of negligence. This was the most the defendant could fairly ask under the

authorities, and whether or not there was negligence was a question for the jury and the instructions upon this subject were based upon established and well-known precedent.    We, therefore, overrule the third specification of error.

The fourth specification relates to the knowledge of the defendant company as to the existence of the hole into which the horses plunged, which resulted in the accident of which the plaintiff complained.    The paragraph complained of is as follows: "But the hole being there, the contention of the defendant is that there was no evidence to show that the company was aware that it was there.    As I understand the law, it was the duty of the company to know whether the hole was there, and whether the plaintiff could drive from the boat in safety." If it was the duty of the company to provide a safe landing, this, of course, involved a presumption of the knowledge on its part, and imposed the duty of seeing that the landing was safe.

Taking the charge as a whole, we think it was entirely adequate and was free from error.

Judgment affirmed.